UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LORETTA CARVALHO,

   Plaintiff,

v.                  Case No. 8:14-cv-581-T-17AEP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

  Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

**I.**

**A. Procedural Background**

  Plaintiff filed an application for a period of disability and DIB (Tr. 149-55). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 57-79, 84-96). Plaintiff then requested an administrative hearing (Tr. 97-98). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 41-56). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 16-38). Subsequently, Plaintiff requested review from the

Appeals Council, which the Appeals Council denied (Tr. 1-15). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

**B.    Factual Background**

Plaintiff, who was born in 1962, claimed disability beginning February 24, 2011 (Tr. 149). Plaintiff completed one year of college (Tr. 171). Plaintiff's past work experience included work as a human resources training coordinator, a phone representative, a waitress, a cleaner, an audit clerk, and in data entry (Tr. 55, 201). Plaintiff alleged disability due to degenerative back problems, depression, bipolar disorder, and diabetes (Tr. 170).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity since February 24, 2011, the alleged onset date (Tr. 21). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: status post back surgery, disorders of the back, obesity, diabetes mellitus, history of sleep apnea, anemia, gout, and gastroesophageal reflux disease ("GERD") (Tr. 21). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 26). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform the full range of light work (Tr. 27). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity,

persistence, and limiting effects of her symptoms were not entirely credible (Tr. 28). Given Plaintiff's background and RFC, the ALJ determined that Plaintiff could perform her past relevant work as a Human Resources Training Coordinator (Tr. 33). Accordingly, based on Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff not disabled (Tr. 33).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant

work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct

legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*).

### III.

Plaintiff argues here that the ALJ erred by failing to find Plaintiff's mental impairment severe and failing to properly consider the opinions of Plaintiff's treating physicians. For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

**A.    Mental Impairment**

Turning first to the issue of whether the ALJ properly considered all of Plaintiff's severe impairments, the decision demonstrates that the ALJ applied the proper legal standards at step two of the sequential evaluation process. Indeed, step two operates as a threshold inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 Fed. App'x 850, 853 (11th Cir. 2013) (*per curiam*). At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520, 404.1521. A claimant need show only that his or her impairment is not so slight and its effect is not so minimal that it would clearly not be expected to interfere with his or her ability to work. *McDaniel*, 800 F.2d at 1031; *see Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984) (*per curiam*). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v.*

*Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (*per curiam*).

Notably, however, the finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 Fed. App'x 890, 892 (11th Cir. 2013) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied); *see Heatly v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe). Here, the ALJ determined that Plaintiff had the following severe impairments: status post back surgery, disorders of the back, obesity, diabetes mellitus, history of sleep apnea, anemia, gout, and GERD (Tr. 21). Accordingly, since the ALJ determined that Plaintiff suffered from multiple severe impairments at step two, and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from a severe mental impairment is rendered harmless. *Packer*, 542 Fed. App'x at 892; *Heatly*, 382 Fed. App'x at 824-25.

Notwithstanding, the ALJ considered, at length, Plaintiff's mental impairment (Tr. 23-26)

and properly concluded that Plaintiff's mental impairment was not severe. Indeed, the record supports the ALJ's conclusion in that regard. Namely, Plaintiff first sought treatment for her mental impairment in April 2011 at BayCare Behavioral Health ("BayCare") (Tr. 319-22). At that time, she was diagnosed with an adjustment disorder with depressed mood, despite the lack of any significant clinical findings (Tr. 322).

In July 2011, Plaintiff met with Dr. Melissa Trimmer for a consultative psychological examination (Tr. 480-83). During the examination, Plaintiff reported that she was unable to work due to her physical health problems (Tr. 480). Upon examination, Dr. Trimmer noted that Plaintiff's demeanor and responsiveness to questions was cooperative and her manner of relating, social skills, and overall presentation was adequate (Tr. 481). Dr. Trimmer found that Plaintiff looked her stated age, was appropriately dressed, had good personal hygiene and grooming, had a brace around her torso and used a cane to ambulate, had a slow and uneven gait, had normal posture, had lethargic motor behavior, and maintained appropriate eye contact (Tr. 482). Dr. Trimmer noted that Plaintiff's speech was intelligibly fluent, the quality of Plaintiff's voice was clear, Plaintiff's expressive and receptive language was adequate, Plaintiff's mood was irritable, Plaintiff was oriented on three spheres, Plaintiff's sensorium was clear, and Plaintiff's thought processes were coherent and goal-directed with no evidence of delusions, hallucinations, or disordered thinking (Tr. 482). According to Dr. Trimmer, Plaintiff maintained intact attention and concentration, intact recent and remote memory skills, average intellectual functioning, fair insight, and fair judgment (Tr. 482). Dr. Trimmer opined that, vocationally, Plaintiff appeared to be capable of understanding and following simple instructions and directions, cognitively

capable of performing complex tasks independently, capable of performing complex tasks independently, capable of maintaining attention and concentration for tasks, could attend to a routine and maintain a flexible and limited schedule, capable of learning new tasks, capable of using fair judgment when making decisions, capable of managing money, and able to relate to and interact appropriately with others on a casual basis but had difficulty dealing with stress (Tr. 482-83). Dr. Trimmer diagnosed Plaintiff with an adjustment disorder with mixed chronic anxiety and depression and with some borderline personality features, determined Plaintiff's prognosis was fair, and recommended that Plaintiff continue with psychological and psychiatric treatment (Tr. 483).

Dr. John Pierson met with Plaintiff from June 2011 through May 2012 at Baycare (Tr. 550-68). During the June 2011, outside of retarded pscyhomotor behavior, reports of paranoia sometimes, and poor judgment and insight, Dr. Pierson noted completely normal findings for Plaintiff (Tr. 566). Dr. Pierson diagnosed Plaintiff with bipolar disorder and recommended medication and therapy (Tr. 567). In July 2011, Dr. Pierson adjusted Plaintiff's medications (Tr. 562). Plaintiff returned to BayCare in August and September 2011 and was tearful, complained of stressors, and was continued on a medication regimen (Tr. 558-61). Plaintiff met with Dr. Pierson in October 2011 complaining that her mood was not stable, she was a "massive emotional rollercoaster," she got depressed, and she had suicidal ideations although no plan to commit suicide (Tr. 556). Dr. Pierson continued her on a medication regimen (Tr. 556). In November 2011, Dr. Pierson noted that Plaintiff had been taking high doses of narcotics for pain and had recently been hospitalized for withdrawal and further noted that she was awaiting disability

income (Tr. 555). Dr. Pierson noted that Plaintiff's mood was depressed, speech was normal, remote memory was fair, and recent memory was only partial (Tr. 555). Dr. Pierson continued Plaintiff on her medication regimen (Tr. 555). During a February 2012 appointment with Dr. Pierson, Plaintiff reported that she experienced "super depressive" episodes, only got out of bed for three or four days, and had suicidal thoughts (Tr. 554). Upon examination, Dr. Pierson noted that Plaintiff's mood was anxious, she had no current suicidal ideations, and was oriented on four spheres (Tr. 554). In March 2012, Dr. Pierson noted that Plaintiff had a casual appearance, agreeable attitude and behavior, neutral affect, neutral mood, stream of thought and speech within normal limits, motor activity within normal limits, fair judgment, fair memory, and no suicidal or homicidal ideations, so Dr. Pierson continued Plaintiff on a medication regimen (Tr. 552). In April 2012, Dr. Pierson found Plaintiff's appearance casual, affect and mood anxious, stream of thought and speech within normal limits, thought content not paranoid, motor activity within normal limits, with fair judgment and memory, and with no suicidal ideations (Tr. 551). Finally, in May 2012, Dr. Pierson noted that Plaintiff was well-groomed with a worried attitude and behavior, depressed and anxious affect, depressed mood, normal articulation with stream of thought and speech, motor activity within normal limits, fair judgment and memory, no suicidal or homicidal ideations, and oriented on three spheres (Tr. 550). Dr. Pierson continued Plaintiff on a medication regimen (Tr. 550).

Despite continually observing normal or slightly abnormal findings upon examination, Dr. Pierson completed a Mental RFC Assessment in November 2011 in which he noted that Plaintiff was markedly limited and moderately limited in nearly every way by her mental

impairment (Tr. 526-28). Dr. Pierson stated that Plaintiff was extremely depressed, was on high doses of pain medication that affected her cognition, was not able to be reliable or consistent on a job, had a down mood that would prevent her from persisting on tasks, could not make mood-related decisions, and could not concentrate on instructions so would have a hard time following instructions (Tr. 528). Dr. Pierson updated his opinion in August 2012 in which he stated that Plaintiff's depression was severe at that time and that the physical pain she experienced exacerbated her depression (Tr. 601). As detailed above, however, neither Dr. Pierson's treatment notes nor Dr. Trimmer's findings supported such extreme limitations or the conclusion that Plaintiff's mental impairment was severe. Indeed, as the Commissioner notes, Dr. Pierson's treatment of Plaintiff was routine and conservative, which provides further support for the ALJ's conclusion that Plaintiff's mental impairment was not severe. *See Newberry v. Comm'r, Soc. Sec. Admin.*, 572 Fed. App'x 671, 671-72 (11th Cir. 2014) (*per curiam*) (finding that an ALJ properly supported his evaluation of a physician's opinion where the ALJ determined that the physician ordered a conservative course of treatment, which belied the physician's finding of severe limitations); *see, generally,* 20 C.F.R. § 404.1529(c)(3)(v).

Furthermore, as discussed by the ALJ, the opinions of the state agency psychological consultants also supported the ALJ's conclusion that Plaintiff did not have a severe mental impairment (Tr. 24-26). They each determined that Plaintiff's mental impairment was not severe and only caused, at most, mild restrictions in Plaintiff's ability to perform activities of daily living and in maintaining concentration, persistence, or pace and caused no restrictions in maintaining social functioning and no episodes of decompensation of extended duration (Tr. 62-64, 73-75).

As state agency medical consultants are considered experts in the Social Security disability evaluation process, the ALJ properly considered such opinions in determining that the evidence of record did not support the conclusion that Plaintiff had a severe mental impairment. 20 C.F.R. § 404.1527(e)(2)(i).

In sum, therefore, the ALJ properly determined that Plaintiff experienced severe impairments at step two and accordingly continued with the sequential analysis. Likewise, the ALJ appropriately considered the evidence of record and properly concluded that Plaintiff did not have a severe mental impairment. The ALJ thus applied the proper legal standards at step two and substantial evidence supports his decision in that regard.

### B.     Treating Physicians

Plaintiff next contends that the ALJ failed to properly consider the opinions of Plaintiff's treating physicians. When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). In determining the weight to afford a medical opinion, the ALJ considers a variety of factors, including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. § 404.1527(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. § 404.1527(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20

11

C.F.R. § 404.1527(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*) (citations omitted).

Plaintiff argues that the ALJ failed to properly consider the opinions of Dr. Pierson, Dr. Ashraf Hanna, and Dr. Robert Kowalski. In rendering his decision, the ALJ considered each of the treating physicians' opinions and afforded each the appropriate weight. With respect to Dr. Pierson, and as discussed more fully above, the ALJ properly considered Dr. Pierson's treatment notes, findings, and opinions and afforded the opinions no weight as Dr. Pierson's treatment notes and the other evidence of record were inconsistent with Dr. Pierson's opinions (Tr. 23-26). *See Phillips*, 357 F.3d at 1240-41; *Sryock*, 764 F.2d at 835. For instance, Dr. Pierson's treatment notes indicated mostly normal findings upon examination, with some occasional symptoms of anxiety and depression. In submitting his Mental RFC Assessment, however, Dr. Pierson determined that Plaintiff was markedly or moderately limited in nearly every functional area. Since Dr. Pierson's own treatment notes and findings were inconsistent with Dr. Pierson's opinions and, given the lack of support in the record for such opinions, the ALJ properly rejected

12

Dr. Pierson's opinions.

Similarly, the ALJ properly considered Dr. Hanna's opinions. As an initial matter, Dr. Hanna opined in September 2011 that Plaintiff could not return to work until further notice and that Plaintiff suffered from a "permanent total disability" (Tr. 508). An opinion about whether a claimant is disabled is an opinion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). Such an opinion by a medical source does not mean that the Commissioner will determine that a claimant is disabled and, accordingly, the ALJ need not afford such opinion any special significance. 20 C.F.R. § 404.1527(d)(1) & (3). As such, the ALJ was not required to afford any weight to Dr. Hanna's opinion that Plaintiff was disabled.

Going further, the ALJ properly afforded Dr. Hanna's opinions little weight as Dr. Hanna's opinions were conclusory, unsupported by his treatment records, and inconsistent with the medical record (Tr. 32). Initially, as the ALJ noted, Dr. Hanna's opinion that Plaintiff suffered from a "permanent total disability" was a conclusory statement. *See Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) ("The regulation in 20 C.F.R. § 404.1527 provides that although a claimant's physician may state that he is 'disabled' or 'unable to work' the agency will nevertheless determine disability based upon the medical findings and other evidence. Dr. Rahaim's conclusory statement that Bell is 'totally disabled' is not explained by his medical findings. We conclude that in this case the ALJ had good cause not to accord substantial weight to Dr. Rahaim's evidence in light of the conflicting medical evidence from the other two doctors."). As the ALJ detailed, Dr. Hanna also filled out a Medical Source Statement in October 2011 in which Dr. Hanna opined that Plaintiff's impairments caused numerous restrictions and

limitations such that Plaintiff could walk less than one block without rest or severe pain; she could sit for a total of less than 2 hours in an 8-hour workday; she could stand/walk for less than 2 hours in an 8-hour workday; she needed to shift positions at will; she needed to walk around during an 8-hour workday; she could rarely lift and carry 10 pounds and never lift 20 pounds or more; her symptoms would be severe enough to interfere with attention and concentration 25% or more of a typical day; she only had bad days; she would miss about 3 days of work per month as a result of her impairments or treatment; and she had limitations with respect to her head movement (Tr. 32, 523-25). In support of these limitations, Dr. Hanna merely cites to Plaintiff's diagnoses of various impairments. Diagnosis of a listed impairment is not alone sufficient to establish disability, however. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Indeed, "[d]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 Fed. App'x 569, 572 (11th Cir. 2005).

Notwithstanding, Dr. Hanna's treatment notes did not support Dr. Hanna's opinion as to Plaintiff's severe functional limitations. For instance, Dr. Hanna typically cited Plaintiff's subjective complaints of pain, found Plaintiff to be in moderate distress, and noted only some tenderness, msucle spasms, restricted range of motion in her spine, and use of an assistive device, which no doctor had prescribed (Tr. 361, 366, 382, 392, 394, 487, 509, 516-17, 529, 532, 534, 539, 583-85). Upon examination, Dr. Hanna found that Plaintiff had negative straight leg raising, normal neurological functioning, normal and symmetrical reflexes, mostly normal strength in her lower extremities, 4/5 strength in her right hip and knee, and normal sensation, except some

decreased light touch sensation in her thighs (Tr. 361, 366, 382, 392, 394, 487, 509, 516-17, 529, 532, 534, 539, 583-85). Furthermore, Dr. Hanna treated Plaintiff conservatively with injections, radiofrequency ablation, medication, and home exercise, heat, and ice (Tr. 356-57, 485-86, 488, 509-12, 516-18, 529-41, 583-86). As such, Dr. Hanna's treatment notes are inconsistent with and do no support the extensive limitations listed by Dr. Hanna in his assessment nor his opinion that Plaintiff was disabled. As a result, the ALJ properly afforded Dr. Hanna's opinions little weight. *Phillips*, 357 F.3d at 1240-41.

Finally, Plaintiff makes a cursory argument that the "ALJ also afforded no weight to the opinions expressed by [Plaintiff]'s surgeon, Robert Kowalski, M.D" (Doc. 11, at 10). Plaintiff failed to articulate the significance of any of Dr. Kowalski's findings or his opinions that support Plaintiff's claim that she is disabled. Notwithstanding, the ALJ considered Dr. Kowalski's findings and opinions in rendering the decision and afforded the opinion no weight as the ALJ found the opinion speculative and vague and because the opinions were rendered while Plaintiff was recovering from back surgery (Tr. 29-30, 274-75, 286-89, 353-55, 363-65, 368-77, 591-93). Dr. Kowalski performed Plaintiff's back surgery in February 2011 (Tr. 274-75, 286-89). Plaintiff continued to follow up with Dr. Kowalski through April 2012 (353-55, 363-65, 368-77, 591-93). During that time, Plaintiff repeatedly reported doing better but also stated that she experienced pain in her lower back that radiated down her leg(s), numbness and tingling in her feet, and problems sleeping (Tr. 353-54, 363-65, 369-70, 373-74). Upon examination, however, Dr. Kowalski consistently observed almost entirely normal findings, except for some tenderness of the right paraspinous and midline and restricted and sometimes painful range of motion on

15

flexion and extension of the lumbosacral spine (Tr. 354-55, 363-64, 369-70, 373-74, 591-93).

Despite mostly benign findings upon examination, Dr. Kowalski stated in April 2011 that Plaintiff's current work status was temporarily totally disabled until further notice (Tr. 365) and stated in May 2011 that Plaintiff would not be able to return to work before the end of September 2011 (Tr. 355). The ALJ properly rejected both of these opinions. As the ALJ explained, Plaintiff was recovering from back surgery around April 2011, which may have precipitated Dr. Kowalski's conclusion, but, as the ALJ noted, the record reflects that Plaintiff was recovering well and demonstrated mostly normal findings upon examination (Tr. 29-30). As a result, the ALJ properly afforded no weight to Dr. Kowalski's opinion that Plaintiff was temporarily disabled until further notice as the opinion was not bolstered by the evidence and the evidence supported a contrary conclusion (Tr. 30). *See Phillips,* 357 F.3d at 1240-41; *Sryock*, 764 F.2d at 835. The ALJ also properly afforded no weight to Dr. Kowalski's opinion that Plaintiff would likely not be able to return to work before the end of September 2011 (Tr. 30). The ALJ found the opinion vague and speculative (Tr. 30). As explained in greater detail in the ALJ's decision, both the objective evidence and the findings upon examination demonstrated that Plaintiff continued to improve and presented with essentially normal findings around the time Dr. Kowalski rendered his opinion (Tr. 30). Accordingly, the ALJ appropriately rejected Dr. Kowalski's opinion that Plaintiff would be unable to return to work until September because the opinion was not supported by the evidence and was speculative, at best. *See Phillips,* 357 F.3d at 1240-41.

Given the foregoing, the ALJ properly considered the findings and opinions of Plaintiff's

treating physicians. The ALJ explained his reasons for rejecting each of the opinions and substantial evidence supports his decision. Accordingly, the ALJ applied the appropriate legal standards and the decision should be affirmed.

## IV.

Accordingly, for the foregoing reasons, it is

RECOMMENDED:

1. The decision of the Commissioner be AFFIRMED.

2. The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 14th day of January, 2015.

ANTHONY E. PORCELLI
United States Magistrate Judge

17

## **NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


cc:   Hon. Elizabeth A. Kovachevich
      Counsel of Record